UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF FLORIDA

Case#: _____

FILED BY _____ D.C.

JUN 03 2020

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - FT. LAUD.

ADEM ALBRA

                              Plaintiff,

v.

CITY OF FORT LAUDERDALE          **and**

                              Defendant

## COMPLAINT FOR DAMAGES INCLUDING INJUNCTIVE RELIEF

Plaintiff, Adem Albra, moves this Court for damages, and injunctive relief, and, hereby files this cause of action against the City of Fort Lauderdale, as the Defendant has demonstrated wanton actions, including deliberate indifference to the life of Plaintiff, by its exclusion, denial, and interference, with his participation in the benefit of a Housing & Urban Development ("HUD") program, Housing of Persons with AIDS ("HOPWA"), 24 CFR § 574.300, locally administered by the City of Fort Lauderdale.

Plaintiff's action against the Defendant is pursuant to 42 USC § 1983, deprivation of Plaintiff's Constitutional Right of Due Process & Equal Protection, secured by the 14th Amendment of the U.S. Constitution; Title II of the ADA & Section 504 of the Rehabilitation – for denial of access to federally administered programs; FL Statute §760.50 and, for violations of the President's, and the FL

Governor's Emergency Order during the coronavirus pandemic, which, the Defendant's willful ignorance of these executive emergency powers, directly harms the Plaintiff.

The refusal by the City in providing Plaintiff access to emergency housing assistance, during the COVID-19 Pandemic, violates the National Emergency Order of the President of the United States; it violates the Executive Order of the Governor of Florida requiring Floridians to "Stay Safer" at home, particularly, elder adults, or immune compromised individuals, like Plaintiff.

## OVERVIEW

In order to protect persons living with HIV/AIDS, like Plaintiff, from increased exposure to COVID-19, which, would increase the overall death count of this pandemic, Congress & and the President had passed numerous acts of legislation, which included funding a tremendous amount of dollars to the federal agencies.

HUD was provided millions of dollars to disburse to city and county grantees, with instructions that during the coronavirus pandemic, persons living with HIV/AIDS would be housed immediately, and, not be homeless at any time, and unnecessarily exposed to the COVID-19 virus.

Not only did HUD provide substantial amounts of monies to each grantee, it also provided them with regulatory waivers in order to reduce all barriers that were in the way  from immediately protecting individuals living with HIV/AIDS from homelessness, and, exposure to the COVID-19 virus (see Exhibit "A").

2

However, the City of Fort Lauderdale, as grantee of these federally allocated monies, had failed, and continues to fail, to provide housing for Plaintiff with these HOPWA dollars, during this nationally declared emergency, putting Plaintiff's life at unnecessary risk.

The actions of the Defendant are completely arbitrary and capricious, and, without respect to the rule of law of the United States as it pertains to HOPWA; nor has any rules, regulations, or regulatory guidance provided by HUD been followed.

To this day, Plaintiff had never provided an iota of due process by the Defendant in this matter, and, the deliberate indifference by the Defendant, demands not only injunctive relief, but punitive damages.

The arbitrary and capricious actions of the Defendant, causes Plaintiff, a person living with HIV/AIDS, and those similarly situated, to be more exposed to the COVID-19, and, have a higher risk of infection and death, as a result.

Plaintiff is still homeless, has HIV/AIDS, and continues to live on the streets, during this covid-19 pandemic, rendering him highly susceptible to acquiring covid-19 and die, all because the Defendants refuse to follow basic law, and decency.

Under the Supremacy Clause of the United States Constitution, any action of law of State or Local government that conflicts with the U.S. Constitution must yield. Also, Defendants are not entitled to Tenth Amendment immunity on ADA Lawsuits.

## PARTIES / JURISDICTION AND VENUE

1. Jurisdiction for this suit is conferred in part by 42 U.S.C. 1983, which provides, in part:

   > Every person who, under color of any statute, ordinance, regulation, custom or usage, of any State or Territory, or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action of law, suit in equity, or other proceedings for redress.

2. Under 28 U.S.C. 1331 and 1343(a)(3) and (4), the Court can entertain an action to redress deprivation of rights guaranteed by the United States Constitution, and the Court has jurisdiction to hear an action to redress deprivation of rights guaranteed by the laws and the Constitution.

3. 42 U.S. Code § 12131 et seq, Title II of the ADA, requires federal jurisdiction to hear claims of discrimination by State and Local Government.

4. Plaintiff is a private individual, a resident of Broward County, Florida, and venue before this court is appropriate.

5. Defendant  is a local government, in the State of Florida, with the right to sue and be sued, and venue before this court is appropriate.

## STATEMENTS OF THE CASE

1. Plaintiff, Adem Albra, suffers from HIV/AIDS, has no income, and is entitled to federal HOPWA housing services.

2. Defendant, the City of Fort Lauderdale, is the local grantee, responsible for providing housing services, through the federally allocated, HOPWA program.

3. On March 13, 2020, the President of the United States, declared a national emergency due to the covid-19 pandemic, and, signed emergency executive orders to ensure the safety of Americans.

4. On March 9, 2020, the Governor of the State of Florida, declared an emergency, and signed executive actions, due to the covid-19 pandemic, and, required all Floridian to stay home, particularly elderly or individuals who were immune compromised.

5. On March 10, 2020, Broward County Administrator issued an emergency order, 20-03, shutting down all non-essential businesses, and requiring residents to stay home, and, to go only go out for essential services.

6. On March 17, 2020, the Chief Judge of Broward County, signed an emergency order prohibiting any evictions of tenants from their residence, due to the seriousness of the coronavirus, until late August 2020.

7. On February 5, 2020, the City of Fort Lauderdale's HOPWA program denied Plaintiff services, and, failed to provide him a denial letter, a hearing, or any due process, as required by HOPWA program requirements.

8. On May 4, 2020, as Plaintiff was homeless during this pandemic, he had contacted the Defendant's HOPWA program for immediate, emergency assistance. He had also provided with a letter stating the services he needed (see attached Exhibit "B"), however, no response was forthcoming.

9. Defendant's HOPWA program informed Plaintiff they were too busy to provide him emergency housing assistance, and, were unable to provide him with housing assistance, one week later, May 11, 2020.

10. Broward County Emergency Order required hotels and motels to only accept first responders, or, individuals who need the stay in a hotel because they have no other place to live, and, it will be used as their primary residence.

11. On May 11, 2020, the Defendant's HOPWA program provided Plaintiff with a hotel voucher at a run-down extended stay America hotel, although Plaintiff

had specifically informed his housing counselor that he wanted an alternate hotel, or, at least an alternate extended stay location, as a form of accommodation. The Defendants unilaterally denied this request without an interactive process.

12. Defendants claimed they were contractually obligated to only utilize one of two ExtendedStay Hotel locations; yet, Plaintiff had his preferred location willing, ready, and able to accept this same housing voucher.

13. On May 11, 2020, Plaintiff had no choice but to go to the 'run-down' extended stay hotel, where, the staff already knew that Plaintiff did not like that hotel and requested another location.

14. From the onset of arriving at the hotel, Plaintiff had notified the Defendant's housing counselor of the hostilities, and the garbage ridden hotel. Yet, nothing was done.

15. The hotel would not provide Plaintiff clean sheets and towels, and, Plaintiff had developed a 'boil' on his skin, where, he had went to the hospital for treatment.

16. Plaintiff had notified the hotel manager of this boil, and she had filed an incident report with her company.

17. A few days after that, the hotel notified Plaintiff's housing counselor, that it is unilaterally choosing not to renew Plaintiff's reservation despite the fact they are contractually obligated to do so.

18. The management of the hotel went so far as to notify the 2nd hotel that HOPWA uses, to block Plaintiff access to that location, and labeled him a 'do not rent to'.

19. Despite Plaintiff's numerous attempts to have the Defendants either enforce their contract HOPWA contract with the extendedstay hotel, or, provide him with an alternative motel to stay at, the Defendants refused to take any action whatsoever.

20. On May 29, 2020, the Extended Stay America Hotel falsely informed the Broward County Sheriff's Dept that they changed Plaintiff's status from resident to guest, and, therefore, could have Plaintiff removed, the same way they could any other guest[sic].

21. On May 29, 2020, Plaintiff was ordered by the Sheriff's dept to leave the hotel room, within 5 minutes, contrary to Florida Statues as it pertains to who is a resident, and, who is a hotel guest. The hotel willfully violated the law because no evictions were allowed until late August, and, the Defendant and its HOPWA program allowed it.

22. The actions of the Hotel and the Defendant caused Albra unnecessary pain, stress, and humiliation.  Plaintiff also suffers from physiological ailments as a result of his forced homelessness.

23. As of today's filing, the Defendant has never responded to Plaintiff's again, despite knowing he is homeless during the COVID-19 pandemic, and, his life as at heightened risk of acquiring the disease, and dying from the disease.

24. No hearing, no notice, and no due process had been provided by the Defendants.

## COUNT I:  VIOLATION OF FOURTEENTH AMENDMENT  - Equal Protection and Due Process Clause of the 14th Amendment enforceable through 42 U.S.C.§1983

25. Plaintiff incorporates the allegations of paragraphs 1 through 24 above as if expressly realleged herein.

26. The Fourteenth Amendment Equal Protection Clause states, ""nor shall any State [...] deny to any person within its jurisdiction the equal protection of the laws..."

27. The Fourteenth Amendment states, "...No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United

States; nor shall any state deprive any person of life, liberty, or property, without due process of law;"

28. The Defendants failed, and continue to fail, to equally protect Plaintiff from the coronovirus pandemic, despite millions of federal dollars given to HOWPA, and, unlimited regulatory waivers provided to them, as Plaintiff is still sleeping on the streets, without shelter.

29. The Defendants never intervened and never sought to enforce the contract they have with Extended Stay America, and, allowed Plaintiff to be falsely removed for some unknown, and unpublished criteria.

30. The Defendants had not provided Plaintiff any other HOPWA services, and gave no notice, hearing, or any due process to Plaintiff, in violation of HOPWA program requirements, and, the 14th Amendment Due Process Clause.

31. The Defendant's depriving Plaintiff of shelter, in essence, also deprives Plaintiff of his life saving medications, as scientific evidence exists, which proves homeless individuals do not adhere to medication regimes as prescribed by their doctors because of their environment.

32. Without Plaintiff taking his medication as prescribed, he would die, and, his viral load would drastically increase.

33. This increase in Albra's viral load, makes him contagious, and highly likely to pass on the HIV virus to others.

34. The arbitrary and capricious actions of the Defendant, without any due process, require this court to grant an injunction, and punitive damages in this case.

**COUNT II: VIOLATION OF TITLE II OF THE ADA, and Section 504 of the Rehabilitation Act; & FL Statute 760.50**

35. Plaintiff incorporates the allegations of paragraphs 1 through 24 above as if expressly realleged herein.

36. Title II of the ADA requires State and Local Governments to provide disabled persons access to government services.

37. Title II and Section 504 also require State and Local Governments to provide reasonable accommodation to qualified individuals with a disability, and, to engage in an interactive process.

38. FL Civil Rights Statute 760.50 states that any reasonable accommodation request made by a person with HIV/AIDS, shall be construed as reasonable.

39. The Defendants were already aware of Plaintiff being a qualified American with a disability, as he suffers from numerous disabilities, including HIV/AIDS.

40. The Defendants had denied further access to the disabled Plaintiff to the HOPWA program.

41. The Defendant denied Plaintiff's reasonable accommodation requests that include: provide him with an immediate alternate hotel/motel to stay out; provide Plaintiff an alternate to the hotel they assigned him too; to provide additional housing services, such as long term placement with payment for a duration of one year, as per HUD Coronavirus instructions; and, to follow HUD's policies and procedures/memorandums issued during the coronavirus.

42. Defendant also failed to engage in the interactive process regarding his accommodation.

43. Defendant failed to provide a disabled American equal access and opportunity to government programs under its control, specifically HOPWA.

44. Defendant's actions are liable for damages to Plaintiff, under Title II of the ADA, and FL Statute 760.50.

45. Actions of the Defendant require injunctive relief, and, demonstrate a disregard for the law, demanding punitive damages.

## ARGUMENT/MEMORANDUM OF LAW

The Defendant refuses to provide Plaintiff with meaningful access to the federal program HOPWA, and, deprives him of due process, and equal protection as required by the 14th Amendment of the U.S. Constitution.

The egregious actions by the Defendant demonstrate a contempt for persons living with HIV/AIDS, like Plaintiff. The willingness of the Defendant to inflict harm against disabled persons with HIV/AIDS, who are homeless, during this contagious pandemic by failing to house them, although the City had been provided millions of additional dollars, and unlimited regulatory waivers to ensure there would be no delay in protecting persons with HIV/AIDS.

## STANDARD OF REVIEW REQUIRED

The Supreme Court set forth the review required in its opinion in *Mathews v. Eldridge, 424 U.S. 319 (1976)*. Although access to a public benefit would normally require medium scrutiny, willful deprivation of access during executively declared national emergencies, where, the actions of the Defendant, is, in direct opposition to

these declared emergency orders, requires this court to utilize the strict scrutiny standard.

## REQUIREMENT FOR INJUNCTION

Plaintiff's life is in danger based on arbitrary actions of the Defendant. It is in the public's interest to have this injunction issued because the President of the United States, and, the State of Florida had issued emergency orders in efforts to protect Americans by requiring them to stay home. The government does not want immune compromised Plaintiff suffering from HIV/AIDS, out on the streets to face increased risk of exposure to Covid-19, so they provided millions of dollars and regulatory waivers to the Defendant, and provided specific guidance from HUD, which the Defendant willfully chooses to arbitrarily use.

The likelihood of Plaintiff success in this case should be clear, even if it was based on the Defendant's failure to provide any due process.

## MEMORANDUM OF LAW

### Article VI, Clause 2 – US Constitution (Supremacy Clause)

This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.

14

**Amendment XIV - Section 1**

All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

**42 USC 1983**

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

**WHEREFORE**, Plaintiff moves this court to declare the defendants actions to be a violation of the fourteenth amendment of the US Constitution, enforceable through the 14th Amendment, moved through 42 U.S.C. 1983.  Defendant has also violated Title II of the ADA, and FL Statute 760.50.  This court must issue an

injunction to prevent an unnecessary death at the hands of the Defendant. Damages, including punitive damages are evident in this case.

I hereby affirm the above to be true and correct under penalties of perjury on this 3rd day of June 2020.

Adem Albra, pro se
860 NE 34th Street
Fort Lauderdale, FL 33334
954-638-8190
ademalbra@hotmail.com

## CERTIFICATE OF SERVICE

Plaintiff hereby affirms that a copy of this Complaint was via email below on this 3rd day of June 2020:


City Manager, CLagerbloom:               City Mayor, DTrantalis:

clagerbloom@fortlauderdale.gov            dtrantalis@fortlauderdale.gov


_____

Adem Albra
860 NE 34th Street
Oakland Park, FL 33334
954-638-8190
ademalbra@hotmail.com

EXHIBIT "A"



**U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT**
WASHINGTON, DC 20410-7000

OFFICE OF COMMUNITY PLANNING
AND DEVELOPMENT

MEMORADUM FOR:    All Community Planning and Development Field Office Directors,
Deputy Directors and Program Managers

FROM:    *Digitally signed by JOHN GIBBS Date: 2020.03.31 17:43:00 -04'00'* John Gibbs, Assistant Secretary, Acting, D

SUBJECT:    Availability of Waivers of Community Planning and Development
(CPD) Grant Program and Consolidated Plan Requirements to
Prevent the Spread of COVID-19 and Mitigate Economic Impacts
Caused by COVID-19

**PURPOSE**

This memorandum explains the availability of waivers of certain regulatory requirements
associated with several CPD grant programs to prevent the spread of COVID-19 and to facilitate
assistance to eligible community and households economically impacted by COVID-19. This
memorandum covers waivers of consolidated plan requirements for all CPD formula programs and
program-specific waivers for the following CPD programs:

- Housing Opportunities for Persons with AIDS (HOPWA);
- Emergency Solutions Grant (ESG); and
- Continuum of Care (CoC).

This memorandum also announces a simplified notification process for recipients of these
programs to use this waiver flexibility to expedite the delivery of assistance. CPD Field Office
Directors, Deputy Directors, and Program Managers are instructed to inform CPD recipients
operating within their jurisdictions of the content of this memorandum.

**NOTIFICATION PROCESS**

Recipients may use the waivers described in this memorandum to assist affected CPD
program beneficiaries and CPD program eligible households to prevent the spread of COVID-19
and to mitigate against the economic impact caused by COVID-19 for eligible households. To use
the waiver flexibility provided in this memorandum, the recipient must provide notification in
writing, either through mail or e-mail, to the CPD Director of the HUD Field Office serving its
jurisdiction no less than two days before the recipient anticipates using the waiver flexibility.
Further directions on notifying HUD can be found in Attachment #1.

**WAIVER AUTHORITY**

In December 2019, a new coronavirus known as SARS-CoV-2 was first detected in Wuhan,
Hubei Province, People's Republic of China, causing outbreaks of the coronavirus disease COVID-

19 that has now spread globally.  The first case was reported in the United States in January 2020. In March 2020, the World Health Organization declared the coronavirus outbreak a pandemic and President Trump declared the outbreak a national emergency.  During this time, the majority of states have declared states of emergency with most shutting down large gathering places and limiting the movement of their residents.  As a consequence, many CPD recipients are facing challenges in ensuring appropriate shelter options are available for program participants who need to be separated from others because they are exhibiting symptoms, training staff on how to safely work with program participants and prevent spreading the virus, obtaining supplies to prevent the spread of the virus, and maintaining necessary staffing levels during the outbreak.  Further, many program participants are suffering economic consequences from the mass shutdown of businesses and lack of availability of traditional mainstream benefits.  A number of recipients have inquired about the availability of waivers of various CPD program requirements to facilitate assistance to program participants and prevent the spread of the virus.

In accordance with 24 CFR 5.110, HUD may, upon a determination of good cause and subject to statutory limitations, waive regulatory provisions.  Additional regulatory waiver authority is provided in 24 CFR 91.600.  These regulatory provisions provide HUD the authority to make waiver determinations for the ESG, CoC, and HOPWA Programs and consolidated planning requirements for all CPD formula programs.

## WAIVER AVAILABILITY

To provide additional flexibility to communities to prevent the spread of COVID-19 and better assist individuals and families, including those experiencing homelessness infected with the virus or economically impacted by the virus, I hereby find good cause to provide the regulatory waivers below.  To use each waiver, each recipient must follow the notification process described above and update its program records to include written documentation of the specific conditions that justify the recipient's use of the waiver, consistent with the justifications and applicability provisions below.  Provisions that are not specifically waived remain in full effect.

### CONTINUUM OF CARE PROGRAM

**1. Fair Market Rent for Individual Units and Leasing Costs**

| | |
|---|---|
| **Requirement:** | Rent payments for individual units with leasing dollars may not exceed Fair Market Rent (FMR). |
| **Citation:** | 24 CFR 578.49(b)(2) |
| **Explanation:** | The CoC Program regulation at 24 CFR 578.49(b)(2) prohibits a recipient from using grant funds for leasing to pay above FMR when leasing individual units, even if the rent is reasonable when compared to other similar, unassisted units. |
| **Justification:** | Waiving the limit on using grant leasing funds to pay above FMR for individual units above FMR, but not greater than the reasonable rent will |

| | |
|---|---|
| **Citation:** | 24 CFR 576.106(d)(1) |
| **Explanation:** | Under 24 CFR 576.106(d)(1), rental assistance cannot be provided unless the total rent is equal to or less than the FMR established by HUD, as provided under 24 CFR Part 888, and complies with HUD's standard of rent reasonableness, as established under 24 CFR 982.507. |
| **Justification:** | Quickly moving people into permanent housing is especially critical in preventing the spread of COVID-19. Waiving the limit on rental assistance to rents that are equal to or less than the FMR, established by HUD, will assist recipients and subrecipients in more quickly locating additional units to house individuals and families experiencing homelessness. |
| **Applicability:** | The FMR restriction is waived for any individual or family receiving Rapid Re-housing or Homelessness Prevention assistance who executes a lease for a unit during the 6-month period beginning on the date of this memorandum. The ESG recipient or subrecipient must still ensure that the units in which ESG assistance is provided to these individuals and families meet the rent reasonableness standard. |

## HOUSING OPPORTUNITIES FOR PERSONS WITH AIDS (HOPWA)

### 14. HOPWA – Self-Certification of Income and Credible Information on HIV Status

| | |
|---|---|
| **Requirement:** | Source Documentation for Income and HIV Status Determinations. |
| **Citation:** | 24 CFR 574.530, Recordkeeping |
| **Explanation:** | Each grantee must maintain records to document compliance with HOPWA requirements, which includes determining the eligibility of a family to receive HOPWA assistance. |
| **Justification:** | This waiver will permit HOPWA grantees and project sponsors to rely upon a family member's self-certification of income and credible information on their HIV status (such as knowledge of their HIV-related medical care) in lieu of source documentation to determine eligibility for HOPWA assistance of families and grantees affected by COVID-19. |
| **Applicability:** | Eligibility is restricted to a low-income person who is living with HIV/AIDS and the family of such person. This waiver is in effect for recipients who require written certification of the household seeking assistance of their HIV status and income, and agree to obtain source documentation of HIV status and income eligibility within 3 months of public health officials determining no additional special measures are necessary to prevent the spread of COVID-19. |

EXHIBIT "B"

# Adem Albra

## HOMELESS DUE TO THE DENIAL OF HOPWA
### 954-638-8190
ademalbra@hotmail.com

May 4, 2020

Rachel Williams, *HOPWA Administrator*
**The City of Fort Lauderdale**
100 N Andrews Avenue
Fort Lauderdale, `33301
&
Tiffany Arieagus, Director
**SUNSERVE**
2312 Wilton Dr, Wilton Manors, FL 33305

Re: 1) Denial of Access to HOPWA as recent as Feb2020
     2) Request for immediate, temporary housing due to
        me being homeless, then,
     3) Permanent placement housing where HOPWA pays
        First, last, security, as well as any deposits
        for electric, water, etc.
     4) Rental Assistant payment, TBRA, for 1 year as
        Provided thru the stimulus money & HUD req.

Dear Ms. Williams & Ms, Arieagus:

Congress, our President, and the Executive Agencies have spent an enormous amount of money, including monies to the federal agencies, like HUD, to ensure HOPWA is properly funding to prevent homelessness and death for persons living with AIDS like myself.

Despite you both being fully aware of my housing crisis you had ignored requests made as recently as February 2020, despite knowing that CORONAVIRUS existed, and I was homeless.

1

HUD had provided HOPWA with waivers to fulfill the requests that I make to you in the above-referenced section, so there is absolutely no barriers that exist for to obtain these necessary housing needs.   YOU HAVE ALREADY PUT MY LIFE IN DANGER AND YOU WILL NOT DO SO FOR A MOMENT LONGER.

Therefore, you are hereby informed that I demand you to act immediately to my requests, as my life depends on it.   Again, all requests that I made in the referenced section are allowable under HUDS Guidance for HOPWA during the coronavirus.

This is even true for the tenant based rental assistance which lasts for a duration of one year.   So as I anticipate you claiming there is some unknown, and unpublished list of people awaiting for TBRA; it does not apply in this national emergency.

Moreover, I expect to live in a 2 bedroom unit.   One bedroom will be for me, and the other unit will be for a caretaker or someone like that as I have been experiencing long term issues with AIDS. I have AIDS, and not HIV.

So no other persons will be allowed to reside in the same dwelling as me whatsoever.   You had already been given written documentation from my doctor informing you that I have an unusually sensitivity to smells that make me nausea and unable to eat.

Also, I am happy to see that our President is well aware of the difficulties persons like me have in obtaining access to this federal funding administered through local grantees, like yourself.   As a result, he and our U.S. Attorney General realize that peoples lives are at staff, and it is a serious matter.

Therefore, the Attorney General had created a webpage and form to utilize to report NCDF Disaster Fraud (you will see a

copy attached), as the AG has instructed his U.S. attorneys to consider these complaints as the highest priority.

Lastly, I expect to hear from both of you via email tomorrow as well as have the temporary housing shortly thereafter available to me. Then I expect permanent housing as stated above.

I also expect to be reimbursed all dollars I borrowed from others, as of April 2, 2020, to be fully reimbursed immediately as the loaned charity of others is what kept me alive, it wasn't you.

I will also be following up with the National AIDS Housing Coalition in this matter to ensure this never happens to another person living with AIDS.

The government has allowed you unlimited amount of waivers; hence, no further delays can be justified.


Thank you,

s/Adem Albra

Adem Albra

cc:   CLagerbloom@fortlauderdale.gov

      DTrantalis@fortlauderdale.gov

      Laurenk@nationalaidshousing.org

      USAFLS-CitizenCompla@usdoj.gov

      James.Berrocal@hud.gov

EXHIBIT "C"

## BROWARD COUNTY ADMINISTRATOR'S
## EMERGENCY ORDER 20-03
## Directing Shelter-in-Place: Safer at Home Policy

**WHEREAS**, COVID-19, a respiratory illness caused by a virus that spreads rapidly from person to person and may result in serious illness or death, constitutes a clear and present threat to the lives, health, welfare, and safety of the people of Broward County;

**WHEREAS**, on March 1, 2020, Governor DeSantis declared a Public Health Emergency as a result of COVID-19;

**WHEREAS**, on March 9, 2020, Governor DeSantis issued Executive Order 20-52, declaring a State of Emergency as a result of COVID-19;

**WHEREAS**, on March 10, 2020, I declared a Local State of Emergency; on March 11, 2020, the Mayor of Miami-Dade County declared a Local State of Emergency; and on March 13, 2020, the Mayor of Palm Beach County declared a Local State of Emergency;

**WHEREAS**, on March 11, 2020, the World Health Organization declared the spread of COVID-19 to be a global pandemic;

**WHEREAS**, on March 13, 2020, President Trump declared a national emergency concerning COVID-19;

**WHEREAS**, there is no vaccine or drug currently available to combat COVID-19;

**WHEREAS**, to reduce the spread of COVID-19, the United States Centers for Disease Control and Prevention ("CDC") and the Florida State Department of Health recommend implementation of community mitigation strategies to increase containment of the virus, including cancellation of large gatherings and social distancing of at least six (6) feet between persons in smaller gatherings;

**WHEREAS**, the tri-county area of South Florida, comprised of Miami-Dade County, Broward County, and Palm Beach County, is a contiguous community with both

1

commercial and cultural continuities, and both Broward County and Miami-Dade County have emerged as clusters of positive COVID-19 cases;

**WHEREAS**, on March 10, 2020, the Broward County Board of County Commissioners authorized me to take any appropriate and necessary action to protect the health and safety of Broward County residents and visitors in connection with COVID-19;

**WHEREAS**, on March 24, 2020, the World Health Organization indicated that the United States has the potential to become the center of the COVID-19 pandemic;

**WHEREAS**, this Emergency Order is necessary because of the propensity of the virus to spread person to person and also because the virus is physically causing property damage due to its proclivity to attach to surfaces for prolonged periods of time;

**WHEREAS**, this Emergency Order is necessary to protect the lives, health, welfare, and safety of the County's residents from the devastating impacts of this pandemic,

**WHEREAS**, certain additional clarifications, exclusions, and inclusions are necessary to support effective enforcement of the restrictions of Emergency Order 20-01;

**NOW, THEREFORE**, I, Bertha Henry, the Broward County Administrator, pursuant to my emergency authority under Section 8-53 of the Broward County Code of Ordinances, as well as the authority granted to me by the Declaration of Emergency issued by Governor DeSantis in Executive Order 20-52, by Chapter 252, Florida Statutes, by the Board of County Commissioners, and by the Broward County Comprehensive Emergency Management Plan, hereby order as follows:

Section 1.    This Emergency Order is supplemental and in addition to the Executive Orders issued by Governor DeSantis, including Executive Orders 20-70 and 20-71. Emergency Order 20-01, as amended, is hereby further amended and restated as provided herein, with strikethrough text indicating deletions and underlined text indicating additions.  Except as expressly amended herein, Emergency Order 20-01, as

2

amended, remains in full force and effect.  This Emergency Order applies to incorporated and unincorporated areas within Broward County, but has no application outside of Broward County.

Section 1A.   Individuals are strongly urged to remain home other than to engage in essential activities, which are the minimum activities necessary to conduct Minimum Business Operations (as defined in Section 2 below) or to engage in or patronize Essential Businesses (as defined in Section 3 below), unless otherwise expressly exempted from the limitations of Broward County Administrator's Emergency Order 20-01 as set forth in Section 4 and Section 6 below.  Individual daily outdoor exercise that complies with CDC social distancing guidelines is permitted.  Individuals outside their homes shall comply with all requirements of the Executive Orders issued by the Governor of the State of Florida and all Broward County Emergency Orders, and must adhere to all measures advised by the CDC regarding social distancing.

Section 2.     All nonessential retail, nonprofit, and commercial business locations (meaning all that are not expressly deemed essential as stated in Section 3 below) are ordered closed except to the extent necessary to perform Minimum Basic Operations. "Minimum Basic Operations" means the minimum activities necessary to maintain the value of inventory, preserve plant and equipment condition, ensure security, process payroll and employee benefits, and facilitate employees working remotely, provided such businesses shall practice, and ensure persons interacting with and within such businesses practice, social distancing and all other measures as advised by the CDC.

Section 3.     The following retail, nonprofit, and commercial businesses are deemed essential ("Essential Businesses") and existing retail and commercial business locations of these businesses may remain open, but shall practice, and ensure persons interacting with and within such businesses practice, social distancing and all other measures as advised by the CDC:

3

a.      Except to the extent precluded by the Governor's Executive Order 20-72 or any subsequent Executive Order, healthcare providers and public health operations, including but not limited to: hospitals; doctors' and dentists' offices; urgent care centers, clinics, and rehabilitation facilities; physical therapists; mental health professionals; psychiatrists; therapists; research and laboratory services; blood banks, medical cannabis facilities; medical equipment, devices, and other healthcare manufacturers and suppliers; reproductive health care providers; eye care centers; home healthcare services providers; substance abuse <u>treatment</u> providers; medical transport services; and pharmacies;

b.      Grocery stores, farmers' markets, farm and produce stands, supermarkets, food banks, convenience stores, and other establishments primarily engaged in the ~~retail~~ sale of canned food, dry goods, fresh fruits and vegetables, baby products, pet supply, liquor, fresh or frozen meats, fish, and poultry, and any other household consumer products (such as cleaning and personal care products). This authorization to remain open includes stores that sell <u>both</u> groceries and ~~also sell other~~ non-grocery products~~,~~ ~~and~~ <u>or</u> products necessary to maintaining the safety, sanitation, and essential operations of residences and other structures;

c.      Businesses engaged in food cultivation, including farming, livestock, and fishing;

d.      Businesses that provide food, shelter, social services, and other necessities of life for economically disadvantaged or otherwise needy individuals;

e.      Newspapers, television, radio, and other media services;

f.      Gas stations, <u>marine fueling stations,</u> new and used automobile dealerships, and auto-supply, auto-repair, <u>motorcycle, scooter, and motorcycle or scooter repair shops, bicycle and bicycle repair shops,</u> and related facilities;

g.      Banks and related financial institutions, including insurance firms and pawn shops;

the Governor's Executive Order 20-52 is currently scheduled to expire) for persons other than Essential Lodgers. "Essential Lodgers" are defined as: (1) healthcare professionals; (2) first responders; (3) National Guard members; (4) law enforcement; (5) state or federal government employees; (6) airline crewmembers; (7) patients; (8) patients' families; (9) journalists; (10) others providing direct services in response to COVID-19; (11) displaced residents or visitors dislodged from local lodging due to the COVID-19 crisis; (12) persons utilizing hotels as transitional living arrangements; (13) persons sheltering in hotels due to domestic violence; (14) hotel employees, service providers, and contractors; or (15) ~~individuals~~ Broward County residents who, for any reason, are temporarily unable to reside in their home due to exigent circumstances;

     hh.    Veterinarians clinics, pet hospitals, and pet boarding facilities;

     ii.    Mortuaries, funeral homes, and cemeteries including funeral and cremation services;

     jj.    Firearm and ammunition supply stores;

     kk.    Businesses providing goods or services to any local, state, or federal government pursuant to a contract with such government ~~and provided~~, but only if such goods or services relate directly to a governmental response to the COVID-19 crisis, or relate to a governmental public works construction project within Broward County;

     ll.    Any business that employs five (5) or fewer persons, including management/ownership, where the employees do not come in regular contact with the general public in the regular course of business and the business can conduct its business in a manner that complies with the recommended social distancing and other requirements of previous executive orders, except to the extent inconsistent with any Executive Order or regulation issued by the Governor of Florida, the state, or any federal authority;

     mm.    Electrical production and distribution services; ~~and~~

     nn.    Moving, storage, and relocation services; and

9